We have two cases set for argument this morning and one case is being resolved on the written materials and briefs that we have received to date. Before we go any further, I want to recognize the student scholars that are participating in the Hispanic National Bar Association IP Intellectual Property Law Institute here in Washington, D.C. So, our first case this morning is Data Engine Technologies LLC v. Google LLC 21-1050. Mr. Chen, are you ready to proceed? I am, Your Honor. And you have reserved five minutes for rebuttal, is that correct? Four minutes for rebuttal. Four minutes, okay. You may start, please. Good morning, Your Honors, and may it please the Court, Justin Chen for the appellant, Data Engine. The District Court's grant of summary judgment of non-intringement should be reversed because it was based solely on a preamble term that does not limit the claims, and specifically, I'm referring to the term three-dimensional spreadsheet. The first thing I want to address today is the prosecution history, which does not show clear reliance on the term three-dimensional spreadsheet to distinguish the invention. Now, the standard that Google and the District Court have to meet here is a high one. Just showing reliance is not enough. It has to be clear reliance on that term. And the main point I have to make here is that the applicants could not have distinguished Lotus based on the three-dimensional spreadsheet term because Lotus itself is a three-dimensional spreadsheet. Counsel, what about the emphasis on the three-dimensional spreadsheet during the one-on-one proceedings that occurred in District Court and before this Court? Right, Your Honor. So, in the previous appeal, there were references made to the term three-dimensional spreadsheet, but at that time, I think everyone's understanding of that term was simply as a multi-page spreadsheet. And if you look at the Court's previous appeal, you told us that your having certain characteristics, right? Well, the term does appear in the preamble of the claim, but I think it's just an intended use. I don't think we meant to say that. Counsel, this is Judge Reina. I follow up with Judge Stoll. I sat on that particular panel that we're talking about and it seems that she's correct. I assume that she's correct that we said it's directed to a three-dimensional spreadsheet? Yes, that was the invention. Well, I'd say we didn't mean to say that three-dimensional spreadsheet is a limitation of the invention. And I think even if that were the case, I don't think we were using this sort of definition that the District Court and Google are proposing. We just meant that three-dimensional spreadsheet is a multi-page spreadsheet. Counsel, this is Judge Stoll again. So, I think what I hear you to be saying is that you did tell us, and we actually agree, and we've said specifically in our opinion that your claims are not abstract, but rather directed to a specific improved method for navigating through complex three-dimensional electronic spreadsheets. And that was the basis on which we found your claims eligible. So, you're saying, I think what you're saying is even if that preamble has weight, that you think it's going to have the meaning that the District Court ascribed to it based on the prosecution history. Is that what I hear you to be saying? Yes, I would say that, but I'm also arguing that the preamble shouldn't be a limitation regardless of what we may have said in the previous appeal, which was addressing a completely separate issue. No, it was addressing what are the claims directed to. Right? Yes, I guess when I say a claim is directed to something, I guess I don't necessarily mean that it's specifically limited to that. And certainly not if this preamble, whether it's a limitation, is an issue at that time. It was not an issue. So, counsel, when we're looking at the directed to inquiry, think to ourselves, we're going to say what this claim is directed to for purposes of 101, but ultimately later when we're doing claim construction, we might just say that limitation has no weight at all. Well, I guess you do have to look at what I guess the potential meaning of that term could be. To the extent it just means a multi-page spreadsheet, then it would be duplicative of what's in the body of the claim. And so it wouldn't really add anything for the 101 inquiry. Counselor, in Catalina, we said that a preamble limits an invention if it recites essential structure or steps or if it necessarily gives life, meaning or vitality to a claim. And during prosecution history, the examiner, like the district court did years later, the examiner viewed the term three-dimensional spreadsheet as a fundamental characteristic of invention in responding to the prior arguments that were being made. If it's a fundamental characteristic of invention, why doesn't that fit in within our expression of how a preamble limits an invention in Catalina? Right. So if you assume that the three-dimensional spreadsheet is a fundamental characteristic, which I disagree with that interpretation of the prosecution history, I think even if that's the case under the court's reasoning and Arctic cast, that term should still not be a limitation because 3D spreadsheet and the preamble is completely conventional. And that fact, I do not believe is disputed. This notion of relative addressability in the page dimension was well-known in the art and in fact practiced by the prior art Lotus at issue here. Do you dispute that the applicants relied on language in the preamble during patent prosecution to distinguish the claimed invention from the prior art? Yes, I do. So if, if the distinction was made and we argue in our briefing that there was no distinction, but assume for the case, there was that distinction was between a multiple spreadsheet and a single spreadsheet. And you don't actually need the term three dimensional spreadsheet to make that distinction. And it's because of the word page because in the they would understand that to refer to pages in a single spreadsheet. They would not take that to mean a case where you have multiple separate spreadsheets and each of those separate spreadsheets has a single page. And so the distinction can be based on that claim language, which is in the body of the claim. You don't have to rely on the preamble term three-dimensional spreadsheet to make that distinction. Counsel, this is Judge Stoll again. I understand your position. You know, as you probably can tell, I think that preamble has weight, but I understand your position that the claim language itself should be defining what a three-dimensional spreadsheet is. But what do I do with that language in the prosecution history that it, you know, it was a long time ago, but it says a three-dimensional spreadsheet defines a mathematical relation among cells on the different pages so that operations such as grouping pages and establishing 3D ranges have meaning. I mean, how am I supposed to not understand that to be, you know, a definition of a three-dimensional spreadsheet as it was understood by the inventor at the time of the invention? Well, I think, so they use the term three-dimensional spreadsheet, but that's not really the heart of the distinction that's being made. And to point the court to, you know, just two sentences earlier, the applicants were talking about really usernameable page identifiers in a 3D spreadsheet. And to understand that sentence, that issue at the end of that paragraph, you really have to look at the immediately preceding sentence. The applicants were talking about the examiner's sort of use of Lotus where you link individual cells in separate spreadsheets. And in the next sentence, they're really talking about, well, what would be analogous to that in a 3D, a single spreadsheet? So when you link individual cells in multiple spreadsheets, that's kind of a formula that uses a self-reference to another spreadsheet as a variable. And in a single spreadsheet, you have that formula, but it's not a link. It's a mathematical relation because it's stronger than a link. And so when they talk about mathematical relation, it's really just the analogous operation in a single spreadsheet. And your view is that opposed it would understand that and not view this as a linear equation. Yes. And if to the extent it does offer a definition, it's just talking about that it has to be a single spreadsheet, not multiple separate spreadsheets. And unless there are further questions about whether the preamble is a limitation, I do want to make one point about what the proper construction of the term would be if it is a limitation. So in reaching its construction, the district court relied on the premise that relative addressability is what really allows 3D ranges to be possible. But that premise is not correct. It's possible to implement a 3D range using just absolute addresses. And there's a diagram on page 23 of appellant's opening brief, also available on appendix page 11, whichever is more convenient. But basically it shows a three-dimensional block of cells that are all shaded in on the right-hand side on three pages of a spreadsheet. Now, a 3D range is simply a three-dimensional block of cells. And here you can see a 3D block of cells that's shaded in, and it spans three pages. There are 27 cells in this 3D block, and the pages are labeled page one, page two, and page three. And you can select this block using relative addressability by selecting the shaded square on page one, which has nine cells in it, and then designating page three as the end point. And the system would then automatically give you what's shaded here, a 3D block of cells. But the point is you can select the exact same block of cells, the exact same 3D range using absolute addresses for the pages. All you have to do is select corresponding... Counselor, what was your argument to the district court that how we should construe the term three-dimensional spreadsheet? I believe it was a spreadsheet having cells arranged in a 3D grid. But the way we understood 3D grid was just for each cell has three coordinates that you can refer to it by. Okay. The district court construed this to be a spreadsheet that defines a mathematical relation among cells on different spreadsheet pages, such as the cells are arranged in a 3D grid. Isn't that pretty much what you just said? No, because the district court had a differing understanding on what 3D grid means. They understood that to mean that you needed this idea of relative addressability in the page dimension, whereas our understanding of it was not that limited. Okay. You're into your rebuttal time. Do you want to continue? I'd like to reserve the rest of my time for rebuttal, Your Honor. Okay. Then let's hear from the other side. Ms. Anders? Thank you very much. This is Ginger Anders for Google LLC. The preamble term three-dimensional spreadsheet is a claim limitation and the district court correctly construed it. Both conclusions followed directly from the specification and the prosecution history and are reinforced by all of the other evidence in this case. That's one of the points that counsel for DET just made. I don't think it would be possible for the prosecution history here to be much clearer. In that prosecution history, the applicant expressly characterized the invention as an improved user interface in three-dimensional spreadsheets. And then to counter the examiner's glide, quote, falls far short of a true three-dimensional spreadsheet. So in other words, it is the three-dimensional spreadsheet context that distinguishes the claims from the prior art. I think that's very strong evidence that the term is limiting. And at the same time, the applicant also defined what a three-dimensional spreadsheet is, saying that, quote, a 3D spreadsheet defines a mathematical relation among cells on different pages so that operations such as grouping pages and establishing 3D ranges have meaning. That is almost word for word the judge's goal. Could you just slow down a tiny bit? And also, I want to say, what does that mean to that language? A three-dimensional spreadsheet defines a mathematical relation among cells on different pages. Sure. So what that means is that the spreadsheet itself are arranged in a 3D grid. So there's an x and y-axis and also a z-axis. And so the pages of the spreadsheet are aligned along the z-axis. And that alignment along the z-axis gives rise to the mathematical relation between different pages. So the spreadsheet itself knows, for instance, that page four is three pages back from page one. So it understands the relative relation of those two pages. And so it understands that a cell on a particular page is a certain number of pages away from a cell on another page. So that's the underlying mathematical structure that supports functionality like 3D ranges and grouping pages. And to something that my friend on the other side said, I'd just clarify that I think the district court's construction requires that mathematical structure, that 3D structure, that gives rise to the mathematical relation among the cells on different pages. But it does not require any particular type of functionality to be present. The district court was quite careful to must be able to support functions like 3D ranges and grouping pages, but those don't have to be present as a matter of a claim limitation. Got it. There's a mathematical relation between a cell, not necessarily a mathematical relation between contents in a cell on different... That's exactly right. So as the applicant itself defined it in the prosecution history, it's an inherent mathematical relation between the cells. So it's not what a user does. By inputting content into the cell, in other words, by creating a formula or something like that, that is not the mathematical relation that the applicant was talking about. And I think the specification is to the same effect because what it says on page 109 of the JA is that a three-dimensional spreadsheet has cells arranged in a 3D grid. And in this manner, the user can manipulate multi-dimensional ranges. So that's getting at the exact same concept that you have this three-dimensional grid. It creates the mathematical relation that then supports some of the three-dimensional functionality. Suppose we were to agree with Data Engine that the preamble is not limiting. What does that do to your arguments? Well, I think the court would still have to construe a claim 35 where it is an antecedent basis. So the preamble term is an antecedent basis and three-dimensional spreadsheet is used in the term itself. I do think, though, that it could not be clearer here that the preamble term has to be limiting. I mean, not only the arguments that DET itself made in the prior appeal and the prosecution history that we were just discussing, but the specification as well explains that the 3D structure is important to the claims because that's the central problem that the applicant set out to solve was the increasing complexity of spreadsheets that culminated really in 3D spreadsheets that became unusable for users beyond the graph of the users. It seems to me that the preamble may describe the invention or give a name to the invention, but does it actually recite the central structure or steps? Because that's what's necessary in order to finish up what Catalina says necessary to give life, meaning, and vitality to the claim. I think that's right. And what Catalina said is that in determining whether the preamble term is really essential, you look not only to the claims themselves, but to the prosecution history and the specifications. So you look at the whole patent and what the applicant has said about what has invented. Catalina does say that the prosecution history alone can be independently dispositive and establish that a preamble term is limiting. We certainly think that's the case here because of the clarity in the prosecution history. We think the specification is supportive as well. But just to make sort of a broader framing point, and I take the question to first the fact that Claim 12 itself, considered in isolation, doesn't take advantage of three-dimensional functionality. But I think that that's not uncommon in this court's cases. What's the structure or step that is recited in the preamble? So the structure that's recited in the preamble is the three-dimensional grid structure that gives rise to this mathematical relation among cells on different pages. So we think the applicant made quite clear in the prosecution history, it said the fact that the claims operate on this structure is what makes them novel over the prior art. And then in the specification itself, not only is that the problem that the inventor set out to solve, but there are claims in the 259 patent that depend on the three-dimensional structure in order to operate properly. So Claims 26 and 27 and 43 and 44, for instance, are claims that are directed to particular methods of grouping pages so that a formatting change will propagate through all the pages. That is a three-dimensional function that requires the spreadsheet to have that three-dimensional grid structure for the claims to operate properly. And just to go back to the point I was making before, I think the premise of this court's cases on preambles and in particular cases like Corning Glass and General Electric is that it's not that uncommon to have a situation in which you look at the claims and you see that in theory, a particular claim could operate more broadly than the context that's defined in the preamble itself. But the court has said that's not in itself dispositive. That's why you have to look to the specification and the prosecution history to determine whether the preamble is actually important to the invention, even when the claim body itself could, in theory, operate more broadly. I think the General Electric case is a particularly good example of that. And again here, the applicant told us that in the prosecution history that this is what the claim is directed to. It's directed to a three-dimensional spreadsheet. And I think that's particularly notable because what the applicant was expressly distinguishing was that broader spreadsheet context in which the claims in isolation could, in theory, operate. And so the examiner said, your innovation already exists in the context of a collection of two-dimensional spreads. And the applicant says, no, that's not right because those multiple two-dimensional spreads, that's not a true three-dimensional spreadsheet. My invention is a true three-dimensional spreadsheet. So I think it's very clear from the prosecution history that this is additional structure that the claims operate on. That's how the applicant intended this. And if I could just address my friend on the other side's argument that the distinction being made in the prosecution history was about separate pages or separate files, separate spreadsheet files versus separate pages. I think that's just simply not what the separate files. But that's not what it identifies as lacking in the prior art. What it identifies as lacking in the prior art is this three-dimensional grid arrangement and the consequent mathematical relationship among cells. If the real distinction were between spreadsheet files and spreadsheet pages, the applicant could have simply said that. It would have been very straightforward. And I think that everything else points in the same direction. The specification doesn't mention anything about separate files or pages within a single file. And that kind of reading, I think, would also be inconsistent with some of the claim language. Claims 1 and 35 of the 545 patent expressly are directed towards a spreadsheet with multiple pages in a single file. So that can't be intrinsic to the three-dimensional spreadsheet because otherwise that language would be redundant. And finally, the inventor, I think, when asked whether separate files was the relevant distinction between a three-dimensional spreadsheet and the rest of the prior art, he said no, that the relevant distinction was this three-dimensional grid structure. And that's on page 1235 of the joint appendix. And I guess the other point I would address about the prosecution history is the argument that Mr. Chen makes that Lotus was, in fact, a three-dimensional spreadsheet. So the applicant couldn't have been distinguishing Lotus based on that ground. I'd just like to clear that up a little bit. So Lotus had both separate files, spreadsheet files, and within each file it had multiple spreadsheet pages. And those multiple pages within the spreadsheet file were a three-dimensional spreadsheet. They had, they were arranged in this three-dimensional grid structure. The separate files didn't have that same relationship as between files. So where the applicant is saying Lotus's files are not a true three-dimensional spreadsheet because they don't have the three-dimensional grid, that is accurate. And it's also, I think, entirely consistent with what the applicant says later about the pages being a three-dimensional spreadsheet. So I don't think that argument works as a way to try to say that the applicant was not distinguishing, was not distinguishing its invention from the prior art on the basis of the three-dimensional spreadsheet context. If there are no further questions. Any questions from my colleagues? All right. We thank you, counsel, for your arguments. Mr. Chin, you got four minutes to rebuttal. Okay. Thank you, your honor. I'd just like to address three points that were raised in counsel's argument. So first point goes to mathematical relation. There was a discussion of how, according to counsel, it doesn't go to the contents in the cells, but I disagree. And it's what I was talking about earlier. If you look at that sentence in the prosecution history, when you look at the sentence right before it, the emphasis is on the ability to link individual cells in separate spreadsheet files. And the way to do that is through a formula that references the contents of the cells in those separate spreadsheets. And so the next sentence, when we're talking about a mathematical relation among cells on the different pages, the analogous thing in a one of the other pages. Second point I want to make is about the... What do you do about the situation? For example, in the litigation with IBM, their data engine attempted to distinguish the cytopyrite by focusing on the three-dimensional characteristics of the invention. And that seems to be the common theme through here in the prosecution history, in the litigation before IBM, and now before us in this case. I'm having a hard time accepting the argument that there never has been an attempt to distinguish prior from the invention here on the basis that it's not a three-dimensional spreadsheet. Do you have a question? Yes. Even if you believe that the distinction was based on the 3D spreadsheet curve, the distinction is based on the difference between multiple spreadsheets and a single 3D spreadsheet. And the applicants did actually make this distinction in the file history, Joint Appendix page 2288, where they said that features such as... It seems like your arguments are based on functionality and not just on the general definition or name of the invention. The purpose of the invention has to deal with the three-dimensional spreadsheets. You get away from that expression, three-dimensional spreadsheets, by focusing on functionality. Well, I don't know if I'd agree with that. I think whether something is multiple spreadsheets or a single spreadsheet, I think has to go to the structure. And 3D spreadsheet, I think, it's just an intended use because this is maybe getting into the weeds, but in the 90s, there were programs that let you get spreadsheets beyond three dimensions, four dimensions, even up to 12 dimensions. And so if 3D spreadsheet limits the claims, it would take those products out of the scope of the claims. And I don't think that's what the inventors intended. And one last point I'll make is, as I was discussing at the end of my earlier remarks, it's possible to implement a 3D range using absolute addresses. And so when you see references to 3D ranges and the specification or the prosecution history, those references don't actually support requiring relative addressability in the claims. And if there are no further questions, I urge the court to reverse. Any additional questions from my colleagues? None for me. Okay, counsel. All right. We thank you, counsel, for the arguments. We'll take this case under submission.